IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 39654-1-III |
| LYNETTE K. BEBEREIA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| JOHN S. BEBEREIA, | ) | |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Lynette Bebereia filed a petition for the dissolution of her marriage to John Bebereia.[1] After John failed to respond to the summons and petition, the court entered an order of default. Thereafter, the court entered a final divorce order. More than two years later, John filed a CR 60(b)(11) motion to "reopen [the] final divorce decree." Clerk's Papers (CP) at 35 (capitalization omitted). The court denied the motion as untimely.

John appeals.

---

[1] For the sake of clarity, the parties are referred to by their first names, no disrespect is intended to either party.

No. 39654-1-III
*In re Marriage of Bebereia*

BACKGROUND

John and Lynette wed on September 24, 1997. On February 18, 2020, Lynette filed a petition for dissolution of the marriage. On February 20 John was personally served with the summons and petition. After John failed to timely respond, Lynette successfully brought a motion for an order of default. Later, on August 31, the court entered its findings of fact, conclusions of law, and final divorce order.

The divorce order required John to pay Lynette $800 per month in spousal support until September 1, 2025, at which point the obligation would decrease to $600 per month until the August 30, 2030 expiration date. The court ordered that the parties would remain as tenants in common of their home until it sold. The divorce order specified the manner in which the home would be sold:

> [T]he wife shall have the exclusive use and possession of said property. The wife shall be responsible for the monthly mortgage, insurance, taxes, and upkeep on the property. The home shall be sold when the wife is ready to sell it. She shall not owe to the husband any rental value for the term she resides in the home. When the home is to be sold shall be the sole decision of the wife. The wife shall select a realtor to use if any to list the home as well as the listing price of the home. If there are any offers made on the home and the decision to accept or reject said offers are not agreed to between the parties, this court shall retain jurisdiction to settle said disputes.

CP at 30, 32. Once the home sold, the order required the parties to "split equally the net proceeds realized from the sale." CP at 30, 32.

2

On September 8, 2022, John suffered a heart attack, necessitating a triple bypass surgery. Due to John's medical condition, his income is limited to "short-term disability insurance benefit, which pays just 60% of [his] normal income." CP at 44. As of October 2022, Lynette continued to reside in the home without any indication she intended on listing it for sale.

On October 19, John filed a "Motion to: 1) Reopen Final Divorce Decree; and 2) Terminate Spousal Maintenance Award." CP at 35 (some capitalization omitted).[2] In his motion, John argued he was entitled to receive his portion of the home's equity within a reasonable time. John asserted that Lynette's failure to promptly sell the home constituted a material breach of the divorce order. On November 18, a court commissioner denied John's motion to reopen the divorce order and granted his motion to temporarily suspend spousal support payments. John moved for revision of the commissioner's order.

In a letter decision issued on February 10, 2023, a superior court judge denied John's motion to revise, concluding that ordering Lynette to sell the home would "directly contradict the explicit terms of the present decree which unambiguously requires [Lynette] to sell or refinance the home only when she is ready to move." CP at 105. The court wrote that "it cannot imply a condition changing this provision without

---

[2] While John's initial motion included a request for termination of his spousal support obligations, that issue is not before us on appeal.

vacating and amending the decree and can only grant the relief [John] seeks if it vacates the existing decree." *Id.* Further, the court concluded that John's motion was untimely as he could "have brought his motion to vacate the decree on this basis within a year after its entry." CP at 106. Lastly, the court found John's argument that the decree was unconscionable unpersuasive.

## ANALYSIS

On appeal John argues the trial court abused its discretion when it denied his motion to reopen the divorce order. Specifically, John contends the court erred in finding his motion was untimely and in declining to find the terms of the divorce order unconscionable. We disagree and affirm.

### TIMELINESS

John argues the trial court abused its discretion in finding his CR 60(b)(11) motion untimely. John asserts that his motion was made within a reasonable time and any delay was based on his reliance that Lynette would make a good faith effort to sell the property.

CR 60(b)(1)-(4) allows a trial court to grant relief from a judgment or order for, among other reasons, mistake, inadvertence, excusable neglect, newly discovered evidence, or fraud. CR 60(b)(11) contains a catchall provision that allows the court to grant a motion for "[a]ny other reason justifying relief from the operation of the judgment." Generally, relief under CR 60(b)(11) is limited to extraordinary circumstances not covered by any other section of the rule. *Summers v. Dep't of*

*Revenue*, 104 Wn. App. 87, 93, 14 P.3d 902 (2001). "Such circumstances must relate to irregularities extraneous to the action of the court or questions concerning the regularity of the court's proceedings." *In re Marriage of Yearout*, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985).

Motions filed under CR 60(b)(1)-(3) must be brought within one year after the order of judgment was entered. More expansively, motions filed under CR (60)(b)(11) may be brought within a reasonable time. *In re Marriage of Thurston*, 92 Wn. App. 494, 499-500, 963 P.2d 947 (1998). What constitutes a reasonable time depends on the unique facts of each case. *Id*. at 500. The passage of time between the entry of the order and the filing of a CR 60(b) motion is not controlling. *Id*. Rather, it's the time between when a party becomes aware of the order and when they file a CR 60(b) motion. *Topliff v. Chicago Ins. Co.*, 130 Wn. App. 301, 305, 122 P.3d 922 (2005). The primary considerations for determining timeliness are "(1) prejudice to the nonmoving party due to the delay, and (2) whether the moving party has good reason for failing to take appropriate action sooner." *Luckett v. Boeing Co.*, 98 Wn. App. 307, 312, 989 P.2d 1144 (1999).

We review a trial court's decision on whether to vacate a judgment under CR 60(b) for abuse of discretion. *Id*. at 309. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A court's

5

decision is considered manifestly unreasonable if: "it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *Id*. at 47.

John was personally served with the summons and petition for dissolution of marriage on February 20, 2020. The final divorce order was entered on August 31, 2020. Following entry of the final order, John acted in conformity with the court's directives by paying his spousal support obligation and dividing his 401-(k) retirement account. Yet, John did not file the CR 60(b) motion until October 19, 2022, when he subjectively believed that Lynette had failed to sell the home within a reasonable time. Conspicuously absent from the record is any indication John was unaware of the final order.

In denying the motion to revise the commissioner's ruling, the trial court found unpersuasive John's argument that he could not bring the motion "before his wife had demonstrated through her inaction that she had no intent to sell . . . within a reasonable time." CP at 105. The court reasoned that, unlike *In re Marriage of Thurston*, on which John heavily relied, there were no unanticipated circumstances that would justify a delay in bringing the motion. The court found that the plain terms of the divorce order allowed Lynette "to sell or refinance [the home] only when she was ready to." CP at 106.

6

The trial court's decision finding John's motion untimely is not manifestly unreasonable. The trial court employed an objective standard of deciding whether the motion was timely. The court recognized John's awareness of the divorce order and subsequent failure to bring the CR 60(b) motion until nearly 26 months later when he subjectively believed Lynette had demonstrated, through her inaction, that she lacked intent to sell the home. The trial court did not abuse its discretion in denying John's CR 60(b)(11) motion as untimely.

John further argues that the court should have granted his CR 60(b)(11) motion because the final divorce order was entered following a default, constituting a trial irregularity. Because we conclude the trial court did not abuse its discretion in finding John's motion untimely, we need not address the merits of his CR 60(b)(11) argument.

UNCONSCIONABILITY

John contends the final divorce order is unconscionable because it leaves the parties as tenants in common of the home rather than fairly and equitably dividing the asset as required under RCW 26.09.080. We disagree.

Fatal to John's unconscionability argument is a lack of any authority that applies the doctrine to a court order. Rather, the cases cited by both parties address the unconscionability of various contract provisions. Moreover, John fails to assign error to the trial court's finding that the basis for the court's final order was Lynette's petition following an order of default, not an alleged settlement agreement between the parties.

7

As it relates to John's assertion that the parties should not hold property as tenants in common, there exists no prohibition on parties to a dissolution remaining co-owners as tenants in common. *See In re Marriage of Monaghan*, 78 Wn. App. 918, 929, 899 P.2d 841 (1995). Importantly, the divorce order limits the parties time as tenants in common until the property is sold, at which time the net proceeds are to be equally divided.

ATTORNEY FEES

Both parties request attorney fees pursuant to RCW 26.09.140 and RAP 18.1. RAP 18.1(a) provides for an award of attorney fees if the applicable law grants to a party the right to recover reasonable attorney fees. Under RCW 26.09.140, "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." In exercising our discretion, we are required to consider the financial resources of both parties, meaning each party's need and ability to pay. RCW 26.09.140; *In re Marriage of Shellenberger*, 80 Wn. App. 71, 87, 906 P.2d 968 (1995).

Although the record provides limited information of the parties' financial resources, RAP 18.1(c) requires:

> In any action where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees and expenses, each party must serve upon the other and file a financial affidavit no later than 10 days prior to the date the case is set for oral argument or consideration on the merits.

No. 39654-1-III
*In re Marriage of Bebereia*

Neither party has filed a financial affidavit. Therefore, we decline to award either party attorney fees.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Pennell, J.